# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2014

Lyle W. Cayce
Clerk

No. 13-30756

BRAND COUPON NETWORK, L.L.C.,

> Plaintiff-Appellant

v.

CATALINA MARKETING CORPORATION; PAMELA SAMNIEGO; JOE
HENSON; L. DICK BUELL,

> Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before WIENER, HAYNES, and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Brand Coupon Network, L.L.C. ("BCN") appeals the
district court's dismissal of its claims pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure.  BCN sued Defendants-Appellees Catalina Marketing
Corp. ("Catalina") and three of its individual officers or employees, Pamela
Samniego, Joe Henson, and L. Dick Buell (collectively, "Defendants"), alleging
deceptive trade practices, trademark violations, and related fraud and tort
claims, all stemming from Defendants' creation of CouponNetwork.com, a
website and business "remarkably similar" to BCN's existing business,
BrandCouponNetwork.com.  The district court ruled that BCN failed to state
a claim for trade secret violation and dismissed the remaining claims as time

No. 13-30756

barred, basing its conclusion on use of the word "immediately" in BCN's petition to describe its attempt to contact Defendants following their entry into the Internet coupon market.  We affirm in part, vacate in part, and remand.

## I. FACTS AND PROCEEDINGS

In July 2011, BCN filed a petition for damages and injunctive relief in state court alleging that it has sold printable coupons and other "coupon technology" over the Internet since 2004, and that Daniel Abraham, BCN's founder and CEO, had contact with Defendants while serving on the board of the Association of Coupon Professionals ("ACP").  BCN alleged that, during an ACP conference on April 27, 2010, Abraham discussed with Defendants Samniego and Henson "confidential information relative to the internet coupon industry and [BCN's] strategies and business plans."  At the time, Defendants "were engaged only in the print coupon business."  BCN also alleged that, around the same time as the ACP conference, or shortly thereafter, Defendants "entered the internet coupon business . . . under the remarkably similar name" of CouponNetwork.com (compare BrandCouponNetwork.com).

The parties dispute whether BCN became aware of Defendants' entry into the market as early as April or May of 2010, or only later, in the fall of 2010.  The parties further dispute whether BCN sustained the business injuries it alleges beginning that April or not until the fall of that year.  The record includes a letter Abraham sent to Defendants in December 2010 seeking to discuss "collaborative options to avoid any confusion in the market place arising from Catalina's adoption of a brand name that is confusingly similar to ours."  The record also includes Abraham's December email resignation from the board of ACP, citing his having "recently discovered" that Defendants had acquired Invenda, BCN's rival, and begun an online marketing program called CouponNetwork.com.  The record contains Abraham's affidavit stating that "[p]rior to October of 2010, I had no knowledge that defendants had engaged

2

in the . . . actions complained of in the Petition for Damages and/or that their practices were detrimental to [BCN]." Finally, Abraham averred that the December 2010 letter was his first successful contact with Defendants after learning of their actions in October 2010, stating that they had failed to respond to his several phone calls placed between October and December.

BCN's petition recites seven causes of action: (1) detrimental reliance; (2) unjust enrichment; (3) unfair trade practices; (4) trade secret violation; (5) trademark infringement; (6) breach of the duty of good faith and fair dealing; and (7) tortious conduct in violation of Article 2315 of the Louisiana Civil Code.[1] Defendants removed the case to the Middle District of Louisiana, asserting jurisdiction based on diversity of citizenship. Defendants then filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, insisting that BCN's claims were facially prescribed or preempted because its petition was not filed until July 2011, more than a year after BCN knew or should have known of the Defendants' entry into the market in or about April 2010. Defendants also urged that BCN had failed to state claims against the individual defendants in their personal capacities. BCN's opposition to the motion to dismiss asserted that the injury did not occur until the fall of 2010; it included as attachments (1) Abraham's affidavit, (2) Abraham's December 2010 letter, and (3) Abraham's emailed resignation from the board of ACP.

The district court granted the dismissal motion, holding that the applicable prescriptive and peremptive periods began to run in April 2010 when Defendants entered the Internet coupon market. The district court based this conclusion on its reading of BCN's petition, which the court

---

[1] The district court dismissed BCN's trade secret claim as insufficiently pleaded, and BCN does not challenge this ruling on appeal.

understood to indicate that BCN became aware of the injury at that time.[2] The district court also dismissed BCN's claims against the individual defendants, holding that BCN's allegations of a "personal duty" owed by those defendants were conclusional and that they acted solely within their roles as agents and employees of Catalina.

The district court entered final judgment on September 10, 2012, dismissing BCN's claims. On October 9, 2012, BCN filed a motion seeking to amend the judgment pursuant to Rule 59(e), and on November 13, 2012, filed a motion for leave to file an amended complaint. The district court denied both motions on June 18, 2013, and this timely appeal followed.

## II. STANDARD OF REVIEW

We review a district court's dismissal under Rule 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[3] Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-

---

[2] The full text of the critical paragraph of BCN's petition reads as follows, with original punctuation:

> Thereafter, on or about April 2010, Catalina who had previously been engaged only in the print coupon business, suddenly entered the internet coupon business and did so under the remarkably similar name of Coupon Network.com (Compare Brand Coupon Network.com) Abraham immediately attempted to reach and was subsequently forced to write to Catalina's president and CEO Mr. Richard Buell demanding that Catalina cease and desist from further use of the nearly identical and overtly confusing name Coupon Network.com. Buell and/or Catalina refused.

[3] *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)).

No. 13-30756

unlawfully-harmed-me accusation."[4] A plaintiff's claim must contain "enough facts to state a claim to relief that is plausible on its face."[5] A petition meets this standard when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## III. ANALYSIS

### A. Timeliness of BCN's Claims

BCN does not appear to dispute that its claims are subject to a one-year limitations period, whether prescriptive or peremptive.[7] Because prescription begins to run "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort,"[8] and because BCN filed its petition in July 2011, the timeliness of its claims depends on whether it became aware of Defendants' entry into the market in April or May 2010, as Defendants argue, or not until October 2010, as BCN insists.

On a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[9] The court may also consider documents attached to either a motion to dismiss or an opposition

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Iqbal*, 556 U.S. at 678.

[7] BCN also concedes that the doctrine of *contra non valentem* does not apply here.

[8] *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002).

[9] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.[10]

When interpreting BCN's petition, the district court considered exhibits attached to BCN's opposition to Defendants' motion to dismiss, noting in its order that "Plaintiff's memorandum in opposition to the present motion appears to factually augment the complaint timeline."[11]  The district court further found the evidence to be "largely diminished and defeated by [BCN's] own allegations in the original complaint."  Yet the evidence was not a referent of the petition, nor could it have been: The affidavit was signed on September 12, 2011, a day before BCN filed its opposition to Defendants' motion to dismiss, and weeks after the filing of the petition.  We conclude that the district court erred when it considered evidence outside the pleadings—and not referred to therein—without converting the motion to dismiss into a motion for summary judgment.  Moreover, when viewed in light of the record before us, a genuine issue of material fact appears to exist, which would preclude summary judgment.  We vacate the district court's judgment to the extent that, pursuant to Rule 12(b)(6), it dismissed BCN's claims as time barred, and remand for further consistent action.

---

[10] *Collins*, 224 F.3d at 498; *see Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.") (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

[11] Defendants contend that the district court "hardly considered these new allegations," but thereby implicitly concede that the district court did consider the new allegations to some extent. In any event, the district court did not explicitly exclude this evidence as improper.

No. 13-30756

On remand, the district court must conduct such proceedings as it determines to be necessary to ascertain whether a triable issue of fact exists regarding the timeliness of BCN's claims, possibly including additional discovery and amended or additional pleadings. In that regard we note that the district court might have misapprehended BCN's argument. The court's order and reasons summarizes BCN's contention this way: "[A]lthough Mr. Abraham knew of the existence of Defendants' website in April 2010, it was not until October 2010 that Plaintiff had actual knowledge of any injury," with a citation to page 6 of BCN's opposition memorandum. The cited page does not, however, contain any statement to the effect that Abraham knew of the existence of Defendants' website before October. The district court's "although" clause is unsupported, and it mischaracterizes BCN's proffered timeline. Similar errors appear in the following paragraph, in the form of two additional citations to the same page of BCN's opposition, page 6, for the following propositions: BCN became aware in April or May of (1) "Coupon Network's existence"; and (2) "Defendants' entrance into the Internet coupon business." The district court's paragraph concludes with the following assertion: "According to the original petition, Plaintiff had actual knowledge of the alleged harm following the discovery of the implicated website in April or May of 2010." An "*id.*" citation follows this statement, which indicates yet another reference to page 6 of BCN's opposition, but which the district court may have intended to refer to the petition itself. But, neither document supports the assertion of the court, which goes on to state:

> [BCN's discovery] of Coupon Network's presence in the Internet coupon business obviously incited the requisite curiosity and inquiry necessary for a showing of constructive notice. Indeed, this knowledge was apparently a substantial impetus to compel an "immediate" cause for contact with Defendants following the April 27, 2010 meeting [citation to page 6 of BCN's opposition memorandum].

7

The first sentence does not contain an error; BCN would have to agree that its discovery gave it constructive notice—and, in fact, actual notice—of claims against Defendants.  Rather, the dispute is over *when* that discovery took place.  The second sentence misconstrues the evidence presented in Abraham's affidavit and its attachments: Not only does the cited opposition memorandum contain no such statement, but even Defendants do not contend that BCN contacted them in April.  The record does not reflect any contact between opposing parties between their April 27 meeting at the ACP conference and BCN's December 15 letter.  Even Abraham's reference to having made telephone calls beginning in October notes that they went unreturned.  Abraham's affidavit contains his clear statement that he had no knowledge of Defendants' actions, and no knowledge of the damage to his business, before October 2010.

## B. Claims against Individual Defendants

BCN maintains that it properly preserved for appeal a second issue, viz., the propriety of the district court's dismissal of its claims against three of Catalina's officers or employees, in their individual capacities, for violations of the Louisiana Unfair Trade Practices Act ("LUTPA").[12]  Defendants counter that BCN has failed to preserve this issue for appeal because BCN did not present it to the district court, only conclusionally stating that the individual Defendants owed it a personal duty.  Defendants also note that, in making this new argument, BCN cites no authority for the proposition that an individual corporate officer or employee may be liable under LUTPA for acts taken within the scope of his employment.  Defendants highlight our opinion in *Industrias*

---

[12] La. Rev. Stat. § 51:1409(A).

No. 13-30756

*Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, in which we noted that status as an agent protects an individual from LUTPA liability unless the circumstances support the extraordinary remedy of piercing the corporate veil.[13]

Defendants correctly note that BCN did not make this contention before the district court. We have stated repeatedly "that we are a court of errors, and that a district court cannot have erred as to arguments not presented to it."[14] Accordingly, we affirm the district court's dismissal of the claims against the individual Defendants, Pamela Samniego, Joe Henson, and L. Dick Buell.

## IV. CONCLUSION

For the foregoing reasons, we vacate the district court's dismissal of the following BCN claims as time barred: (1) detrimental reliance; (2) unjust enrichment; (3) unfair trade practices; (4) trademark infringement; (5) breach of duty of good faith; and (6) tortious conduct; we affirm the district court's dismissal of the individual Defendants Pamela Samniego, Joe Henson, and L. Dick Buell; and we remand for further proceedings consistent with this opinion.

VACATED in part, AFFIRMED in part, and REMANDED.

---

[13] *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 920 (5th Cir. 2002).

[14] *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701 (5th Cir. 2004).