# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30043
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 29, 2015

Lyle W. Cayce
Clerk

United States of America, ex rel, GREGORY D. GUTH,

   Plaintiff - Appellant

v.

ROEDEL PARSONS KOCH BLACHE BALHOFF & MCCOLLISTER,

   Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-06000

Before KING, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:*

  Plaintiff–Appellant Gregory D. Guth brought a *qui tam* action against Roedel, Parsons, Koch, Blache, Balhoff & McCollister for alleged fraudulent billing practices arising from Roedel Parsons's representation of Louisiana State University in an expropriation proceeding against Guth. On appeal, Guth challenges the district court's judgment dismissing the action for failing

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30043

to state a claim. For the following reasons, we AFFIRM the judgment of the district court.

## I.     Factual and Procedural Background

After Hurricane Katrina, the United States Department of Housing and Urban Development (HUD) made federal funds available to the City of New Orleans in the form of Community Development Block Grants (CDBG). The City set aside a portion of the CDBG funds to construct a United States Department of Veterans Affairs medical center and a teaching hospital for Louisiana State University (LSU). The City and the State of Louisiana entered into a Cooperative Endeavor Agreement, assigning LSU the power and funds to acquire or expropriate property for the medical facilities. LSU then hired Roedel Parsons to acquire or expropriate the necessary property.

During negotiations to acquire property from commercial property owners, Roedel Parsons had appraisals completed for both the real estate and any businesses on the property. Roedel Parsons then compensated owners for the greater of the two appraised amounts, maintaining that the compensation satisfied the requirements of the Louisiana Constitution. For Guth's property, the real estate was appraised for $173,000 and the business for $95,000. An expropriation suit was brought against Guth, and Guth was paid $173,000 for his property. As part of the suit, Guth counterclaimed for the loss of his business, and Roedel Parsons rejected Guth's offer to settle the counterclaim for the business's appraisal amount. The original expropriation suit remains pending on appeal in state court.

In this related action, Gregory Guth brought a *qui tam* action under the False Claims Act (FCA) on behalf of the United States against Roedel Parsons for allegedly fraudulent billings for legal work completed during the

2

expropriation proceedings.[1]   In his amended complaint,[2] Guth alleged that Roedel Parsons violated four FCA provisions: (1) the presentment provision, (2) the false statement provision, (3) the "reverse" false claim provision, and (4) the FCA conspiracy provision.   On December 18, 2014, the district court granted Roedel Parsons's motion to dismiss for failure to state a claim under Rule 12(b)(6), and on January 2, 2015, dismissed Guth's complaint and amended complaint with prejudice.   Guth timely appealed.

## II.   Standard of Review

We review *de novo* a district court's granting of a motion to dismiss for failure to state a claim.   *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).   Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[W]e accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff."   *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014).   However, we do not have to accept legal conclusions as true.   *Iqbal*, 556 U.S. at 678.   While a complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' do not establish facial plausibility," *Spicer*, 751 F.3d at

---

[1] A FCA *qui tam* action may be brought by the government or by a private person in the name of the government. 31 U.S.C. § 3730(a)–(b). The United States declined to intervene in the qui tam action.  Guth also named the Board of Supervisors of LSU as a defendant; it was dismissed as a defendant on July 8, 2014.

[2] We refer to Guth's "amended complaint" because Guth's First Amended Complaint incorporated by reference all of Guth's Original Complaint.

365 (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility exists when sufficient facts in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

FCA claims must also meet the supplemental pleading standards of Rule 9(b).  *Spicer*, 751 F.3d at 365; *see also Grubbs*, 565 F.3d at 186 ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading.").  Rule 9(b) requires the party to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This court has succinctly described Rule 9(b) as requiring the plaintiff to "set forth the who, what, when, where, and how of the alleged fraud." *Spicer*, 751 F.3d at 365 (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)) (internal quotation marks omitted).  However, the plaintiff "cannot rely on speculation or conclusional allegations" to fulfill Rule 9(b)'s particularity requirement.  *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008).

### III.  Discussion

On appeal, Guth presents a number of issues for review.  The majority of these issues relate to the same alleged error: that the district court erred in dismissing Guth's FCA claims based on alleged overbilling and double billing by Roedel Parsons.  Guth further argues that the district court erred by: (1) dismissing Guth's FCA claims based on statutory violations for failing to plead a false certification of payment, (2) dismissing Guth's "reverse" false claim, and (3) applying an incorrect standard to Guth's FCA conspiracy claim.  We address each of these arguments in turn.

### A.

First, Guth contends that the district court improperly dismissed his FCA claims based on alleged fraudulent overbilling by Roedel Parsons for legal work relating to the expropriation proceeding against Guth.  Guth does not

allege that the legal bills were fraudulent because they misrepresented the actual work performed by Roedel Parsons. Rather, Guth alleges that Roedel Parsons took a legal position on expropriation compensation—that paying the greater of either the real estate or business value compensated the property owner "to the full extent of his loss"[3]—that "had no legal basis or support in law or fact" in order to increase Roedel Parsons's legal billings from the expropriation process. Thus, Guth's amended complaint alleges that "each, every, any and all such legal bill(s), timesheet(s), memoranda and/or other document(s)" submitted by Roedel Parsons based on this legal position constituted a false claim. Guth also alleges that Roedel Parsons failed to negotiate in good faith and refused to settle in order to further increase its legal fees. Together, Guth argues that these actions allowed Roedel Parsons to fraudulently overbill the government for unnecessary legal work. The district court held that Guth failed to satisfy the pleading standards of Rule 8(a) and Rule 9(b).

Under 31 U.S.C. § 3729(a)(1)(A), liability attaches if a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." Under 31 U.S.C. § 3729(a)(1)(B), liability attaches when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Generally, four elements must be pleaded to state a cause of action under the FCA: "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the

---

[3] Under the Louisiana Constitution, "the owner shall be compensated to the full extent of his loss" from an expropriation. La. Const. art. I, § 4(B)(5).

requisite scienter; (3) that was material; and (4) that caused the government to pay out money." *Spicer*, 751 F.3d at 365.

In his amended complaint, Guth provided only the following limited facts to support his contention that Roedel Parsons fraudulently overbilled: (1) state and federal laws and regulations mandate that negotiation be attempted before beginning expropriation proceedings; (2) LSU hired Roedel Parsons to acquire and expropriate property, Roedel Parsons had the real estate and business appraised "as part of its sham negotiations process," and Roedel Parsons initiated an expropriation[4]; (3) Guth was paid the higher of the two appraisals; and (4) Roedel Parsons rejected Guth's proposed settlement of Guth's counterclaims in the expropriation suit and has continued to refuse to settle. Guth also provides his legal arguments as to why Roedel Parsons's legal position is contrary to the Louisiana Constitution.[5]

Accepted as true, these facts appear to describe a relatively common, albeit contentious, legal proceeding: two parties disagreeing over the appropriate compensation for an expropriation and then resorting to litigation to settle their disagreement. *See, e.g.*, *State Dept. of Transp. & Dev. v. Dietrich*, 555 So. 2d 1355, 1356–58 (La. 1990) (detailing the parties' disagreement over the appropriate compensation for an expropriation under the Louisiana Constitution). These facts alone are not enough for "the court to draw the reasonable inference" that Roedel Parsons overbilled for unnecessary legal work. *Iqbal*, 556 U.S. at 678. Guth attacked the strength of Roedel Parsons's legal position, but advancing a purportedly weak legal argument does not

---

[4] Guth claims that the expropriation was "premature" but fails to provide any facts to support this conclusory allegation.

[5] Those legal arguments were included in a memorandum attached to the original complaint. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("A court's analysis generally should focus exclusively on what appears in the complaint and its proper attachments.").

constitute, by itself, a false statement or fraudulent course of conduct.    In particular, Guth has not pleaded any facts that raise a "reasonable inference" that Roedel Parsons took its legal position, negotiated, or refused to settle merely to increase its legal fees.  Guth's statements that these actions were "contrary to law," and "constituted fraud," are mere legal conclusions that do not have to be accepted as true,  *Iqbal*, 556 U.S. at 678,  and Guth's contention that the actions were undertaken "to maximize legal billings," without more, is merely a conclusory statement without any factual support.  *See id.* at 686 ("But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

Guth also argues that the district court improperly dismissed his FCA claims based on alleged double billing for legal services by Roedel Parsons. Particularly, Guth alleges that multiple attorneys prepared for, traveled to and from, and attended court hearings during the litigation.  Guth does not allege that the attorneys fraudulently billed for time not actually worked or for time worked by others; rather, Guth contends that merely having multiple attorneys involved in the expropriation suit was "unnecessary" and therefore a basis for a FCA claim.

Merely stating that multiple attorneys prepared for and attended hearings does not "allow[] the court to draw the reasonable inference" that the work was unnecessary.  *Iqbal*, 556 U.S. at 678.  As the district court correctly recognized, it is "not uncommon" for more than one attorney to appear on behalf of a client, especially on complex matters such as expropriation suits. Guth also provides several invoices submitted by Roedel Parsons.[6]  However,

---

[6] Those invoices, originally attached to Guth's opposition to Roedel Parsons's motion to dismiss, were expressly incorporated by reference in Guth's amended complaint as proof that Roedel Parsons was submitting bills to the government. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Grp.*, 748 F.3d 631, 635 (5th Cir. 2014) ("The court may also consider

the invoices only provide more evidence that multiple attorneys worked on the matter. "Standing alone, raw bills—even with numbers, dates, and amounts— are not fraud without an underlying scheme to submit the bills for unperformed or unnecessary work." *Grubbs*, 565 F.3d at 190. Nowhere in the amended complaint or its attachments has Guth provided any factual assertions that support his conclusory statements that the additional attorneys were *unnecessary*.[7]  Even accepting all factual allegations as true and interpreting the complaint in a light most favorable to the plaintiff, *Spicer*, 751 F.3d at 365,  Guth has failed to allege sufficient facts to plead a facially plausible claim that Roedel Parsons overbilled or double billed the government for unnecessary legal work. Because Guth has failed to state a plausible claim for relief under Rule 8(a), we do not address the supplemental Rule 9(b) standards.

**B.**

Guth argues that the district court erred in holding that his "false claims predicated on legal violations" failed because Guth did not allege that any statute or regulation required a certificate of compliance or that Roedel Parsons falsely certified compliance. Guth argues that his amended complaint pleaded a plausible claim because it generally alleged that Roedel Parsons "violated the federal regulations of HUD and the CDBG program" and the Code of Professional Conduct when it submitted the allegedly fraudulent legal

---

documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.").

[7] In his amended complaint, Guth alleges that Roedel Parsons attorneys conspired by generating false billings for "unnecessary, unreasonable and duplicative work" based "on information and belief from the practice of law for over 30 years, and from 4 years [of] experience working against Roedel Parsons on this case." However, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

billings to the government.   Under a false certification theory, a defendant can be liable under the FCA for a legal violation if the government requires a certification of compliance with a statute or regulation and the claimant falsely certifies compliance. *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012).   However, "[c]laims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA." *Thompson*, 125 F.3d at 902.   The only specific regulation cited by Guth is OMB Circular A-87, but nowhere in Guth's amended complaint does he assert that the regulation requires a certification of compliance or that Roedel Parsons falsely certified compliance.   Thus, insofar as Guth intended his FCA claims to rest upon violations of statutes or regulations, he has failed to plead the "linchpin of [such] an FCA claim." *Spicer*, 751 F.3d at 365.   The district court therefore did not err in dismissing Guth's FCA claims predicated on legal violations.

## C.

Guth also contends that the district court wrongly dismissed his "reverse" false claim.   Under 31 U.S.C. § 3729(a)(1)(G), liability attaches when a person

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

Guth alleges that by double billing the government, each double payment created an obligation to refund the government.[8]   As previously discussed, Guth has not pleaded sufficient facts to allow the court "to draw the

---

[8] On appeal, Guth also argues that Roedel Parsons may be subject to liability for statutory sanctions for allegedly violating the law.   However, this claim was not raised before the district court, and Guth "cannot raise it for the first time on appeal." *United States ex rel. Marcy v Rowan Cos.*, 520 F.3d 384, 392 n.3 (5th Cir. 2008).

reasonable inference" that Roedel Parsons double billed for unnecessary legal work, *Iqbal*, 556 U.S. at 678, and therefore this court cannot reasonably infer that an obligation to refund the government has arisen.   However, even if we assume Guth sufficiently pleaded facts showing unnecessary double billings by Roedel Parsons, we find no error in the district court's reasoning for dismissing Guth's reverse false claim for failing to plead a plausible claim under § 3729(a)(1)(G).  *See United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 391 (5th Cir. 2008).

## D.

Finally, Guth asserts that the district court employed the wrong standard in dismissing his FCA conspiracy claims.  31 U.S.C. § 3729(a)(1)(C) subjects to civil liability any person who "conspires to commit a violation" of a number of FCA provisions, including the presentment, false statement, and reverse false claim provisions.   Here, Guth asserts that the district court applied a summary judgment standard because the district court cited *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008), for the elements required to show a FCA conspiracy claim.

The district court cited *Farmer* not for the standard to prove a FCA conspiracy claim, but to lay out the elements that Guth had to plead with particularity in order "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This very court has cited *Farmer* for the elements that must be pleaded for a FCA conspiracy claim to survive a 12(b)(6) motion. *Grubbs*, 565 F.3d at 193 (quoting *Farmer*, 523 F.3d at 343).  After laying out the elements of a FCA conspiracy claim, the district court properly articulated and applied the supplemental pleading standard under Rule 9(b) to find that Guth failed to state a claim under the FCA conspiracy provision.  *See id.* (noting that the Rule 9(b) standard applies to the FCA conspiracy provision).

No. 15-30043

We find no merit to the claim that the district court applied the wrong standard in dismissing the § 3729(a)(1)(C) claim.

## IV.    Conclusion

For the forgoing reasons, we AFFIRM the judgment of the district court.