# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2024

Lyle W. Cayce
Clerk

No. 23-40592

---

M.A.C., *a minor*, by next friend Rosalinda Escobar,

*Plaintiff—Appellee*,

*versus*

Leonel Garza, Jr.,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:22-CV-360

---

Before Southwick, Haynes, and Graves, *Circuit Judges*.

Per Curiam:[*]

Plaintiff M.A.C., a Texas middle school student, alleges he was the subject of a deficient police investigation and was arrested without probable cause. He sued an officer involved in the investigation. The officer moved to dismiss the claim, invoking qualified immunity. The district court denied his motion. Finding an insufficiency of factual matter in the plaintiff's complaint to substantiate his theories of relief, we REVERSE and REMAND.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40592

## I. BACKGROUND

### a. Factual background

The following facts are alleged in the operative complaint and attached police incident report. At this stage, we accept them as true. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

A woman called the Roma, Texas police department in December 2021 to report a sexual assault. The alleged victim was the woman's fifteen-year-old daughter, A.P. A.P. identified one of her attackers as her thirteen-year-old uncle, Y.M., and the other as Y.M.'s friend. The assault allegedly happened over the Thanksgiving holiday at A.P.'s father's home.

A couple weeks later, details of a conversation between A.P and staff at a children's advocacy center were also reported to Roma police. The police then applied to a juvenile court for a Directive to Apprehend for Y.M.—essentially, an arrest warrant[1]

Defendant Leonel Garza, Jr., a Roma police officer, arrived at Y.M.'s middle school on the morning of January 5, 2022, to take Y.M. into custody. According to an unsigned entry apparently written by Officer Garza in the police department's incident report, Officer Garza met two school district police officers at the school. Officer Garza then went to the office of Principal Annette Garza and waited there, with the principal, for Y.M. to arrive.

When Y.M. arrived, Principal Garza—not Officer Garza—interviewed him. Principal Garza first informed Y.M. that he was going to be

---

[1] Tex. Fam. Code Ann. § 52.015(a) ("On the request of a law-enforcement or probation officer, a juvenile court may issue a directive to apprehend a child if the court finds there is probable cause to take the child into custody under the provisions of this title.")

arrested. When Y.M. asked her why, she responded, "I don't know[][,] for something you and [redacted] did outside school[.]"Principal Garza told Y.M. that whatever he had done occurred "maybe over the holidays or before[,] I don't know."

Principal Garza asked Y.M. if he had a friend, apparently intending to give him the name that A.P.'s mother had given police for the second boy who attacked A.P. Though that name is redacted from the incident report, it was given in full to the police. Y.M. "hesitate[d] in answering," then asked if Principal Garza meant his cousin, who also attended the school. Principal Garza indicated that she knew Y.M.'s cousin and stated his last name, which Y.M. confirmed. That name led police to identify the second suspect in A.P.'s attack as M.A.C.

When the interrogation ended, Officer Garza arrested Y.M. and took him to a juvenile detention center.

The next entry in the incident report is a narrative of the same conversation but indicates that the information is based on "[v]ideo from inside [the] principal's office." It contains some discrepancies with the narrative above.

Both entries are undated. But the order in which they appear in the incident report suggest that they were not added until January 10 or after—that is, five days later.

Based on Principal Garza's interview with Y.M., Roma police obtained a Directive to Apprehend plaintiff M.A.C., who was fourteen years old at the time. On January 10, another Roma officer, Roberto Garcia, arrested M.A.C. at school. M.A.C. was handcuffed and taken to juvenile detention, where he was strip-searched and held overnight.

Three weeks later, on February 1, Roma police were visited by A.P.'s father, who told them that "the wrong kid had been arrested." A.P.'s father said it was another teen, E.M., who had been at his home the day of the alleged assault, not M.A.C. He said he had already confronted E.M. and E.M.'s mother and that he "kn[e]w [M.A.C.] and the kid has never gone to his house." A lieutenant told A.P.'s father that the police were "working on clearing any errors that might have been done."

About three weeks after that, two Roma officers conducted a photographic lineup with A.P. and her mother. The lineup included photographs of E.M. and M.A.C. A.P. picked E.M. and told the officers she was "100% sure she picked the right person." She did not recognize any of the other individuals. On March 7, a Directive to Apprehend was issued for E.M., and he was arrested the next day.

### b. Procedural background

M.A.C. sued the Roma Independent School District, the City of Roma, and the Roma Police Department under 42 U.S.C. § 1983. He later added Officer Garza and Principal Garza as defendants. He alleges that he was arrested without probable cause in violation of the Fourth and Fourteenth Amendments, and that Officer Garza was "malicious, purposeful, negligent, or reckless" in conducting the investigation.

The city, the school district, Principal Garza, and Officer Garza each moved separately to dismiss the complaint. Officer Garza argued that he was entitled to qualified immunity. The district court orally denied the motions at a hearing. Officer Garza's appeal followed.

## II. JURISDICTION & STANDARD OF REVIEW

We have jurisdiction to review the denial of a motion to dismiss based on qualified immunity. *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (citation omitted). But our review is "restricted" to determining "whether

the facts pleaded establish a violation of clearly-established law." *Ramirez v. Escajeda*, 921 F.3d 497, 500–01 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)).

We review a dismissal for failure to state a claim de novo. *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). To survive a motion to dismiss, the plaintiff, in his complaint, must give "fair notice of what [his] claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). His allegations need not be detailed, but they must support a claim for relief that is plausible on its face. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). A claim is plausible if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Officer Garza appeals on the ground that he is shielded by qualified immunity from any potential liability to M.A.C. Federal law permits individuals such as M.A.C. to sue state officials who allegedly violate their constitutional rights. *See* 42 U.S.C. § 1983. But to succeed, the plaintiff must overcome the shield of qualified immunity. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). The qualified immunity test contains two requirements. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). First, the plaintiff must show that he plausibly alleged that his constitutional rights were violated. *Id.* Second, he must show that our governing case law clearly established the official's actions as unconstitutional. *Id.*

Officer Garza's arguments are directed at the first requirement, arguing that none of his alleged actions actually violated M.A.C.'s rights. M.A.C. responds that Officer Garza wrongly relied on Y.M.'s identification of M.A.C. in the interview with Principal Garza rather than conducting further investigation. M.A.C. advances two constitutional theories in support

of his legal claim. First, he argues that the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335 (1986), entitles him to relief. Alternatively, he points to *Franks v. Delaware*, 438 U.S. 154 (1978).

### a. *Malley* claim

In *Malley*, the Supreme Court concluded that an officer may be liable for a false arrest, despite the issuance of a valid arrest warrant, if the affidavit submitted to the magistrate in support of the warrant was "so lacking in indicia of probable cause as to render official belief in [the] existence [of probable cause] unreasonable." 475 U.S. at 344–45. To succeed on such a claim, a plaintiff must show that a reasonably well-trained officer would know that the warrant affidavit failed to establish probable cause and that he should not have applied for the warrant. *Id.* at 345.

But liability under *Malley* attaches only to the "affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *see also Blake v. Lambert*, 921 F.3d 215, 220–21 (5th Cir. 2019) (denying qualified immunity to school attendance officer who prepared deficient affidavit). An officer "who only provides a portion of the information included in the affidavit," on the other hand, cannot be held liable under *Malley* because he had "no way of knowing whether the 'whole picture' painted by the evidence establishe[d] probable cause." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (quoting *Michalik*, 422 F.3d at 261).

Here, the complaint and attached incident report contain enough allegations to infer, for pleading purposes, that the investigation leading to M.A.C.'s arrest was problematic, to say the least. Y.M.'s identification of M.A.C. during the muddled and confusing interview with Principal Garza, lacking any further corroboration, was not sufficient to warrant the belief that M.A.C. had committed a crime. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d

6

181, 204 (5th Cir. 2009). Indeed, a conversation with A.P.'s father or A.P. herself would have dispelled suspicions against M.A.C.

But there is no allegation that Officer Garza was the "affiant and person who actually prepared" the warrant leading to M.A.C.'s arrest. Nor can we infer that he prepared or submitted the warrant affidavit based solely on the allegation that he participated in and documented the interrogation of Y.M. Accordingly, M.A.C. fails to state a *Malley* claim.

### b. *Franks* claim

M.A.C. argues in the alternative that his allegations state a claim under *Franks*. In *Franks*, the Supreme Court recognized that officers may be held liable for submitting to a magistrate a warrant affidavit that "supplies probable cause on its face" but contains "material misstatements or material omissions." *Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021)). To succeed under *Franks*, a plaintiff must show that an officer "deliberately or recklessly provide[d] false, material information" or made "knowing and intentional omissions that result in a warrant being issued without probable cause." *Id.* (quoting *Melton*, 875 F.3d at 264).

Unlike a *Malley* claim, an officer need not have prepared a warrant application to be subject to liability under *Franks*. *See Melton*, 875 F.3d at 262. He need only have "assisted in preparing" the application. *Id.* That includes providing information to others with the purpose of having that information included in the application. *Id.*

Here, M.A.C. contends that Officer Garza violated *Franks* by "failing to ensure the accuracy and integrity of the information sworn in the arrest affidavit." But he did not allege, nor does the incident report show, that Officer Garza's entry in the incident report contained false material information. The allegation is that Officer Garza relayed what he saw and

heard during Y.M.'s interrogation. There is no allegation that Officer Garza relayed materially false information or that he omitted material details that he observed. *See Terwilliger*, 4 F.4th at 282–83 (concluding that plaintiffs stated claim under *Franks* by alleging that warrant affidavit falsely identified them as members of specific motorcycle clubs and omitted evidence that would have weighed against probable cause). Thus, M.A.C. fails to state a *Franks* claim.

*          *          *

Because M.A.C. fails to show that Officer Garza violated his constitutional rights, he fails to meet his qualified immunity burden. *See al-Kidd*, 563 U.S. at 735.

### c. Dismissal

M.A.C.'s § 1983 claim against Officer Garza fails and therefore it must be dismissed. But whether it should be dismissed with or without prejudice involves the fact question of whether M.A.C. has had the opportunity to plead his best case. *Club Retro*, 568 F.3d at 215 n.34. Our jurisdiction over this appeal is restricted to legal questions. *Ramirez*, 921 F.3d at 500–01. Indeed, whether dismissal with or without prejudice is appropriate is a matter firmly within the discretion of the district court. *Club Retro*, 568 F.3d at 215 n.34. Therefore, we remand to the district court to consider that question in the first instance.

## IV. CONCLUSION

We REVERSE and REMAND.